Morning judges. Good morning, counsel. The first case up this morning is 19-2211 Advantageous Community v. King. Counsel, please prepare to argue. Counsel, good morning. We're ready to hear you. Good morning, your honors. This is Stephen Sanders, attorney for Advantageous Community Services, LLC, Armandur Carr, and plaintiffs Harsipal Singh and Harajan Singh. And this is Daniel Dolan, your honors, arguing for the seven former state employees, including Gary King and six others, one of whom was never served in this case. All right. May I please the court? We're ready to hear you. All right. This case is about the malicious prosecution and continued prosecution to the use of fraudulent documents by the state of New Mexico, by its employees, because you can't sue the state under Section 1983. And it's about qualified immunity. And it's about whether enough discovery has been allowed by the district court before deciding motions for summary judgment. In September of 2009, in the state of New Mexico, through the New Mexico Attorney General's Office, brought suit against Advantageous under the New Mexico Medicaid Fraud Act. The basis of that suit was that some of the Medicare providers, Medicaid providers, had not had a previous criminal background check. And therefore, any billings by those providers were so facto fraudulent. The state took no individuals had in fact, a criminal background, they didn't. The state used documents that were the criminal background check was supposed to be done before the people started their work. During the course of litigation, the state manufactured documents, which they should have had in their file, the original criminal background check, or a copy of the original background check before filing a lawsuit and saying that no criminal background check had been timely or at all ever completed. What are the specific facts that give rise to the assertion that the document that the exhibits were fraudulent? Well, the specific facts that give rise to that assertion were actually found in a state district court case by the state district court. And the state district judge found, and that's prominent in our brief. And I'll just read you a little bit of it that the clearance letters used. Please, please, please don't read to us. Just just tell us this. Just tell us. Okay. Well, the state district court found that the state investigator and other people that were named as defendants in this case actually created documents to show when the clearance letter was in their files, which is a necessary element. So the documents were made up out of whole cloth, or the documents were modified to show the date filing or other essential elements, which was it? I would say it was the latter, your honor. They weren't made up out of whole cloth. But they were, they didn't have the document. So they had to make it up based upon their computer. And which put different governor, different addressee, different dates on these documents, their documents that are essential to their prosecution, because they're alleging there was no timely criminal background check. And so the state district court, as a sanction for using fraud and false evidence, dismissed the case also determined that motion or summary judgment was warranted because the state had no evidence to support its case. And so that's the genesis of this particular action. We allege that for probable cause to bring a lawsuit under even the narrow civil standard, that you got to have your, if you're the state and you're saying something didn't happen, and we have a copy of it, we didn't have a copy of it, state didn't have a copy of it. And therefore, it was just a wholly made up prosecution. Not only that, but Let me interrupt for a minute. Advantageous was sued by the state, but the individual plaintiffs, in this case, they're plaintiffs in this case, were not sued. How can they bring a malicious prosecution case when they weren't part of the prosecution at all? I would say that the individuals couldn't bring a malicious prosecution case, but they can bring a violation of their liberty interest because during the course of litigation, instead of for it to be over, the state terminated the contracts with advantageous at several years into the litigation, wasn't just an immediate thing that was going on. Their names were maligned as using false evidence. In fact, the New Mexico Court of Appeals said it was really of not doing, having false criminal background checks or not having criminal background checks, and yet the state was using false documents to prove its case. In looking at your support for the damage to their reputation, we look to the complaint, don't we? Exactly, because it was a motion. You know, I see lots of arguments in the briefs, but I don't see much in the complaint that gives much detail about the damage to the reputation. We've got two newspaper articles. It says three, but in my copy at least, one of them's in there twice, the same article. But if you look at those articles, they don't even name the individual plaintiffs, and they actually are very negative towards the state about the case. So I have a hard time seeing how that is damage to reputation. Can you enlighten me? Yes, ma'am. What I would say is that this is a small community. The providers of Medicaid services to the state of New Mexico, when the state brought a lawsuit against advantageous, there are only three people there that would be involved in managing and operating advantageous, and it was known throughout the community that those were the three that were accused of falsifying voucher requests to the state of Mexico for reimbursement. Counsel, did I understand your answer to Judge McHugh that there is no malicious prosecution claim against the individuals? By the individual. By the individual. By the individual, yes. A violation of their liberty, due process interest, and having their reputation. No, I understand, but they aren't involved then in the malicious prosecution claim. No, just only advantageous would be involved in a malicious prosecution. I have a couple of questions about the malicious prosecution claim. The district court said there isn't clearly established law that withholding of Medicaid reimbursement is a seizure. Do you agree with that? No, what they did was they actually went back and withheld from currently owed money. No, no, no, I'm asking about the law. Is the law clearly established or isn't it? I'm asking what happened. I'm asking about the district court's holding that there's no clearly established law. Do you agree with that? I don't agree with that. Okay, and where did you say that and cite authority in your brief to that effect? Well, the New Mexico Court of Appeals ruled that you could not withhold money based upon this claim under the New Mexico rules and regulations for Medicaid and the federal rules. And that's the New Mexico Court of Appeals. And the district court held the same thing a couple of years before that, that those regulations were not a basis. And we have two problems with malicious prosecution. It's not only that the lawsuit legally had no factual basis, legal had no legal basis, but had no factual basis because they didn't have the document in their file to provide to say this is when or a criminal background check was performed or never was performed. Counsel, let me just ask you another question. And I'm asking you this question in the context of qualified... Has this court ever recognized that there can be a fourth amendment malicious prosecution based on seizure of property? Your Honor, I'm sorry, I can't answer that. I don't know. But don't you need to have authority that there can be such a cause of action? No, sir. I think under the due process clause of the 14th amendment, that a person has the right to be secure in their personal property with notice and an opportunity to be heard prior to the seizure. And I would like to reserve the rest of my time if I could for rebuttal. Reserved. Your Honor, let me answer a couple of questions that Mr. Sanders glossed over here. They're very, the documents that Mr. Sanders is talking about were actually documents that were contained in an Excel spreadsheet. The state doesn't have the ability to save tens of thousands of copies of letters that are sent out on a routine basis by the Department of Health or Human Services Department of the State of New Mexico. And so what they did was they kept the data, the names of the people, the dates and the content of the information in an Excel spreadsheet. The investigator for the Attorney General's Office went to the Health and Human Services Department, and they printed those using the Excel spreadsheet. They were not copies of original letters. And so when the administration changed, the letterhead changed. And I would point out that the letterhead still has the State of New Mexico seal, State of New Mexico, and over on the left-hand side in small type is the new governor's name. The attorney for the State of New Mexico, the Assistant Attorney General at the time, when these documents were printed, which I would point out was well over a year after the suit was brought by the Assistant Attorney General for the State of New Mexico, David Hughes, that gentleman did a 15-month investigation after having a referral from the Human Services Department and found that there are violations of the Medicaid Fraud Act and that the provider, Advantageous Community Services, had failed to provide the documentation required under the contract that they signed with the Human Services Division, saying that the providers that they had had the criminal background history checks in place. In other words, it was the contract for Advantageous to provide the state with the required notice. And under the Medicaid Fraud Act, the individual... Counsel, given that that would be a technical violation of the contract, how does that become fraud for the building? Were the services actually provided as asserted? In other words, is the fraud based purely on this, what I will call technicality for our purposes, or was it a broader assertion of fraud than that in and of itself? Well, it was a broader assertion, Your Honor, and the reason I say that is because in the deposition of David Hughes, the attorney who actually filed this case and did the 15 months worth of investigation, he noted that... And I point out, it's really important to note that the letters that Mr. Sanders and Advantageous point out as the basis for the allegation of maliciousness by the state didn't even exist. They were actually printed more than a year later by the investigator as the case was going forward by Assistant Attorney General David Hughes, and then later by Assistant Attorney General Landau. So, the investigation actually showed that they had not provided the letters, and so... I understand, I understand, but my question is... Let's say that that's correct in terms of the violation of the contract, but is that the sole assertion of fraud, or were the services, in fact, not provided? In fact, Your Honor, the services may have been provided. The Department of Health was finding in analyzing the work and hearing and discussing the complaints against Advantageous at the Department of Health level that Advantageous had missed appointments, Advantageous had employees that had not met their qualifications required for these respite services, because these are the most vulnerable people in the Medicaid process, people who absolutely have no way of determining whether or not they're being abused. And so, those complaints along with the fact that Advantageous had not produced the letters to the state under the contract, and that they had violated some of the other provisions of the contract, which are basically that they had proper training, that they vetted their people, they missed appointments. That's why the lawsuit was brought. There were 15 months, actually, three and three-quarter years of time when negotiations went on between counsel for Advantageous and the state of New Mexico to settle this case, and it wasn't filed. It was actually begun to be investigated in 2006. It wasn't filed until 2009 by Assistant Attorney General David Hughes. There were more adequate activities by Advantageous that required, under the federal Health and Human Services Department, was vetting and looking over the shoulder of the state of New Mexico because of Medicaid fraud, and New Mexico was under the gun to continue to maintain its own Medicaid programs, and Health and Human Services was saying, you're not doing an adequate job, and that's why that lawsuit was brought. Counsel, as to your point that the action was initiated before these documents were emerged during the discovery process, how do you respond to Advantageous's argument that once the altered letters did surface, that the state continued the action because they chose to appeal the dismissal of the enforcement action? This is the continuation argument as opposed to the initiation argument. Yes, Your Honor. Let me back up just a little bit. Judge Euling held an evidentiary hearing, and at that evidentiary hearing, she found that the counsel for the state of New Mexico had failed to recognize that the administration changed on the letterhead. She was upset that they didn't properly look at the letters before they were trying to be used in a deposition, and I would point out that the Assistant Attorney General for the state of New Mexico immediately withdrew those letters, never referred to them again. The Plaintiff's brought this to Judge Euling, and Judge Euling, because of the power of the state, obviously, in bringing these kinds of cases, dismissed the case outright against the Advantageous. The state felt that that was an unusually harsh action by the state district court judge, and in fact, basically went to the Court of Appeals to say, what we would rather see is, we'll throw this evidence out. We'll prove the violation of the Medicaid Fraud Act by actual testimony to people who drafted the letters, and certainly those people were still working at that time for state government. They could have been brought on and testify in words about that letter being drafted and sent to Advantageous, so there was ample evidence available for the case to continue and for those letters to be thrown out. As a matter of fact, they were never ever referred to again by state counsel. They were obviously thrown away and recognized as being printed from an Excel spreadsheet that was improperly used because of the new administration, so the evidence was still there. Assistant Attorney General David Hughes and Assistant Attorney General Landau both still had ample evidence of the malfeasance of Advantageous, and they appealed basically the decision to throw the case out. They wanted the case to continue, and they would produce the evidence in a different manner, not using the documents because they could use direct testimony. The evidence was still there. Let me interrupt you because it's hard to get a question in. The other argument is that at the very latest, you should have known there was no basis for the lawsuit when the decision in behavioral home care came out, which rejected the whole basis for your fraud claim. Yes, Your Honor, but if you look at the dates of those cases, behavioral health in the underlying case in the New Mexico District was decided after the case was brought against Advantageous, and so that case was appealed separately to the New Mexico Court of Appeals, and that appeal was up at the New Mexico Court of Appeals when the state of New Mexico was appealing the state district court judge's dismissal of their case. Those appeals were almost parallel, but the decision in behavioral health that would impact the case that the state was bringing against Advantageous was actually decided a month after, I believe it was three weeks actually, after the Advantageous case was decided by the Court of Appeals, so it was not settled law in bill for services provided by a respite care provider that didn't have a criminal background check at the time, so it only became settled law a month after the decision by the New Mexico Court of Appeals that Advantageous, affirming the trial judge's dismissal at the evidentiary hearing of the case against Advantageous, so it didn't exist. The law was unsettled. As a matter of fact, Judge Fashing, our district court judge here in this case, in her findings of fact in the summary judgment motion order, basically stated that this was a novel issue, that it was an issue of first impression, and that it occurred a month after the case affirming Judge Euling's ruling against the state was actually heard, so it wasn't settled law in New Mexico. The state had ample opportunity to continue its case, and the evidence was still there and available by the use of individuals to prove that the criminal history background check documents were not filed in a proper manner in compliance with the Medicaid Fraud Act. Counsel, did the district court err on the discovery issue, the Rule 56D issue, by failing to take proper account of the declaration that was filed in support of the motion? Your Honor, I think that is really a false argument. If one looks at the actual docket filings in the federal court case, you'll see that the Advantageous filed a letter three days before the summary judgment motion was actually decided by the federal district court judge. During that time period, we filed our motion for summary judgment almost a year before Judge Fashing ruled that we were granted summary judgment. During that entire year, plus all the documents, as former employees, the state employees that I was defending had no access to the state's computers, no access to their files. We were given a thumb drive with the documents that we turned over with the privilege log to Advantageous. But nevertheless, the magistrate judge granted the motion for additional discovery, and that additional discovery period was still open when the district court judge granted the summary judgment, right? Issued the summary judgment, right? That's correct. That's correct. They had that 12 months from January until December, plus at least another 12 months prior to that to conduct discovery. They didn't even issue third-party discovery subpoenas until late in that last 12-month period. But they had an extension until December of 2019, right? That's correct, Your Honor. So they weren't out of time. They could have still done that, but for the ruling that cut off the discovery period that had been granted by the magistrate. I mean, it's a little confusing in the record what happened because the district court doesn't even mention the magistrate's extending discovery, and the magistrate was very specific, despite your thumb drive with all the documents on it, of the specific areas that they could go into. Am I misunderstanding the record? No, Your Honor. As a matter of fact, what happened in there was late in the time period for the summary judgment motion that was pending, the magistrate judge ordered numerous depositions and numerous documents to be turned over, which was done. So there was a lot of additional discovery that was actually in the hands of Advantageous in that 12-month period. So it wasn't like they didn't have any documents and didn't get anything. They had copious information on this case, and there was nothing left for them to see. The state agencies that they subpoenaed argued that there was absolutely no additional documentation available to them. Judge Lucero, I have a follow-up question. Sure, please go ahead. The district court in its order indicates that Advantageous did not submit any affidavit or declaration in conjunction with its response, nor did it make any effort to comply with Rule 5060. But in fact, Advantageous had filed a declaration in its second supplement. So is it maybe that the court is confused here about what Advantageous actually did? Your Honor, I don't think they were confused at all. I think the court recognized through the magistrate's order that there had been this enormous amount of discovery given, and there was no documentation that would show that they had any ability to identify any additional documents. Both the Department of Health and the AG's office scanned their records after they gave me the thumb drive, and I turned over the thumb drive contents to Advantageous. There was nothing additional that would allow or would authorize additional discovery. So the magistrate judge and then the district court judge basically decided that there being no additional documentation and there being no affidavit describing with any specificity whatsoever what additional documentation could possibly prove Advantageous' case, the dismissal or the affirmance of the summary judgment motion was granted to the defense. So there wasn't anything. There was nothing left. Please answer the question, but be aware that you're running over time by almost two minutes so far. Yes, Your Honor. I'm done. Thank you. Well, Judge McHugh may not. No, I'm finished. Thank you. Thank you. Judge Matheson, questions? All right. Nothing further for me. You're excused. Then we'll hear from your colleague here. Thank you, Your Honor. Starting on that last thing, the declaration that was submitted in support of the motion on the Rule 56-F identified that there were depositions that had yet to be conducted of the defendants because the state refused to cooperate in scheduling those depositions. That's part of the declaration. It mentioned that there were huge gaps in the numbers. It wasn't just, okay, we got 20,000 documents. That's all you get. There were, of those 20,000, there were big gaps without any justification as to why there were gaps. There was a lot of information that was ordered to give an affidavit that the only thing withheld was attorney-client privilege. They didn't even give such an affidavit until 30 days after it was past due. Then, with those huge gaps, some of which it was easy to see from the privilege log that they had been provided to third parties, so attorney-client wouldn't apply to those things. There was quite a bit that needed to be done before the decision should have been made. As far as the Excel spreadsheet that was first mentioned and documents being recreated from the Excel spreadsheet, these are fundamental foundational documents to the theory of their case that there wasn't a criminal background check. They should have had those in the file. As far as the argument that there were other things that Advantageous did that were improper, such as not showing up for appointments, that didn't make it into either the District Court decision or the Court of Appeals decision. The New Mexico Court of Appeals decision was based not only on the sanction, but also on the grant of summary judgment. The District Court found they didn't have any evidence of any of their allegations, if there was more than one, and granted summary judgment. The Court of Appeals affirmed that and affirmed the sanction. One of my points is... As you argue, it occurs to me, why aren't we merely re-litigating at the federal level issues that have already been litigated at the highest court, at the state court level? I think that's a good point. I think the state court made the decision that these... In fact, the Court of Appeals said it was particularly egregious that the state of that's the foundational requirement and that in our society, we don't expect the state to be falsifying documents. That's found foundational to our rights under our due process clause. No, but what I'm asking is, are the issues that you're arguing to us, were they originally presented to the New Mexico State Courts? No, sir. What was presented to the New Mexico State Courts was that there was falsified documents that warranted sanctions and that there was no evidence. A jurisdictional issue arose in my mind during the course of your argument that, what are we doing in the federal courts re-litigating issues that were presented to the state courts? There are several doctrines. Well, I think in fact, the state should be foreclosed from arguing that these were just merely minor errors on the thing and they weren't reused. They were in fact reused all the way to the Court of Appeals. But ours is a damage case. That was a defense case. It wasn't a counterclaim in the other case. Maybe there could have been for malicious abuse of process, but there wasn't. Also, I don't think you can tort law for malicious abuse of process in the state unless it's a police officer. So there were other technical difficulties. I could say more, but I see my time is basically up. I really appreciate the opportunity to argue before you. Thank you, Counsel. We appreciate your arguments. The case is submitted. Counsel are excused.